# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL JOHNSON,

      Plaintiff,

v.                                            Case No. 04-C-242

MILWAUKEE COUNTY,
DAVID A. CLARKE, JR., MARY ANN GRIMES,
JOHN O'SHEA, MARY ELLEN POWERS,
RICK SCHERMERHORN, MINNIE LINYEAR,
and MILWAUKEE COUNTY CIVIL SERVICE
COMMISSION,

      Defendants.

## DECISION AND ORDER

On February 6, 2004, Michael Johnson ("Johnson") filed a complaint in the Circuit Court of Milwaukee County, Wisconsin, alleging various state and federal claims based on the alleged discriminatory conduct of his employer. A Notice of Removal was filed by the Defendants on March 10, 2004. Currently before this Court is the Defendants' motion to dismiss.

## STANDARD OF REVIEW

Dismissal is appropriate only if no relief could be granted based on any set of facts that the plaintiff could prove consistent with his complaint. *See Veazey v. Commc'ns & Cable of Chicago, Inc.*, 194 F.3d 850, 854 (7th Cir. 1999). Thus, the Court will accept, for

1

purposes of this motion to dismiss, all of the factual allegations in the complaint as true. *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976).

## BACKGROUND

Johnson was employed by the Milwaukee County Sheriff's Department as a Deputy Inspector. (Compl. ¶ 10.) On April 7, 2002, Sheriff David Clarke ("Clarke") assigned Johnson to the night shift command, which required Johnson to work a shift from 7:00 p.m. to 3:00 a.m. (*Id.* ¶ 20.)

Shortly thereafter, at a meeting on April 11, 2002, Clarke openly criticized Johnson in front of other Deputy Inspectors, called Johnson a "failure," and said that "if he can get rid of him, he will." (*Id.* ¶ 23.) Following this incident, Johnson was informed that Clarke wanted him to work additional weekend hours. (*Id.* ¶ 24-26.)

Taking umbrage at Clarke's perceived "harassment in continually changing [his] work schedule without sufficient notice," Johnson filed a discrimination complaint against Clarke with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2002. (*Id.* ¶ 27.) Johnson claimed in his EEOC complaint that Clarke was harassing him and changing his work schedule so as to force Johnson into retirement. (*Id.*) After Johnson filed his EEOC complaint, Clarke continued to frequently change Johnson's work schedule and treated Johnson, in at least one meeting, in a "condescending and insulting" manner. (*Id.* ¶¶ 28-38.)

At some time before April 1, 2003, Johnson began to suffer severe stress related symptoms. (*Id.* at 40.) On April 1, 2003, Johnson's physician, Dr. George Holliday,

2

provided Milwaukee County (the "County") a certificate stating that Johnson was under his care and unable to return to work at that time. (*Id.* at ¶ 42.) By letter dated April 3, 2003, Minnie Linyear ("Linyear"), the Human Resources Manager for Milwaukee County, responded to the certificate and informed Johnson that his time off would be considered sick leave and, to comply with a local civil service rule, Johnson needed to submit documentation regarding the nature and severity of his illness. (*Id.* at ¶¶ 43-44.) The letter also instructed Johnson to fill out certain forms, including a Family Medical Leave Act ("FMLA") request form and a physical evaluation form, to comply with Milwaukee County Service Rules. (*Id.* at 45.) Johnson completed and returned some of the forms on April 17, 2003, but included a letter from his attorney indicating that Johnson was not requesting Family Medical Leave. (*Id.* at ¶¶ 46-47.)

On May 29, 2003, Captain Brian Mascari sent a written order to Johnson requiring him to take a psychiatric fitness test for duty assessment to be performed by Dr. Donald Feinsilver. (*Id.* ¶ 48.) Mascari also requested that Johnson sign and return a health care records release form. (*Id.*) On June 2, 2003, Johnson received another order from Captain Mascari, this one ordering a medical fitness for duty assessment to be performed by Dr. Marc Novom. (*Id.* ¶ 50.) Like the first order, this second one also requested a records release authorization form. (*Id.* at ¶ 51.) Johnson submitted to the psychiatric and medical assessments on July 2, 2003, and July 8, 2003, respectively. (*Id.* at ¶¶ 52-53.)

3

On approximately July 14, 2003, Johnson received a letter from Linyear stating that, pursuant to his two examinations, the County would no longer allow him to use sick time for his absence. (*Id.* at ¶ 55.) Instead, future time off would be deducted from his accrued holiday, personal, and/or vacation time. (*Id.*) In accordance with Linyear's letter, and despite protestations of Johnson's counsel, Johnson's time off from work was charged as holiday and vacation time from July 14, 2003 forward. (*Id.* at ¶¶ 56-57.)

On July 29, 2003, Johnson's physician, Dr. Holliday, conducted another medical examination of Johnson, and provided the County a second certificate stating that Johnson was still unable to return to work. (*Id.* at ¶ 58.) On September 4, 2003, Dr. Holliday performed yet another medical examination of Johnson, and once again sent the County a certificate stating that Johnson was unable to work, and that returning to work would be detrimental to Johnson's health. (*Id.* at ¶ 60.) Nevertheless, the County continued to charge Johnson's time off as vacation and holiday time, not as sick leave. (*Id.* at ¶ 59.)

Shortly thereafter, Mary Ann Grimes, the "Assistant Corporation Counsel," contacted Johnson's attorney, John Paunan, and told Paunan that Johnson was required to return to work on September 25, 2003. (*Id.* at ¶ 61.) Grimes told Paunan that failure to return to work would be grounds for termination. (*Id.*)

On August 26, 2003, Johnson appealed the Sheriff's decision that, as of July 14, 2003, his absence from work would be charged from his vacation time rather than his sick leave. (*Id.* ¶ 69.) On September 12, 2003, the Milwaukee County Civil Service Commission (the

4

"Commission") held a hearing regarding Johnson's appeal, but voted to postpone Johnson's matter until the following meeting on November 13, 2003. (*Id.* at ¶ 72.) At the November 13, 2003 meeting, the Commission voted to postpone deciding Johnson's matter until the next meeting on December 12, 2003. (*Id.* at ¶ 74.) Yet again, at the December 12, 2003 meeting, the Commission decided to postpone Johnson's appeal. (*Id.* at ¶ 75.) Finally, on January 28, 2004, the Commission decided Johnson's appeal and denied his request. (*Id*. at ¶ 84.)

In the meantime, Johnson did not return to work on September 25, 2003, despite Grimes' request that he do so. (*Id.* at ¶ 64.) On September 25, 2003, Johnson received a letter from the County indicating that he was no longer on the payroll and that he would have to begin paying for his own health insurance premiums. (*Id.* at ¶ 62.) On September 29, 2003, Linyear told Johnson over the telephone that Johnson's absence from work on September 25, 26, and 29 constituted a resignation on his part. (*Id.* at ¶ 64.)

On February 6, 2004, Johnson filed a complaint in the Circuit Court of Milwaukee County, containing many state and federal claims for relief. The matter was removed to this Court. The Defendants filed a motion to dismiss, which is now pending before this Court.

**DISCUSSION**

I.  Johnson's "Withdrawn" Claims

In his complaint, Johnson alleged that the Defendants were liable for a violation of the Health Insurance Portability and Accountability Act ("HIPAA") (Compl. ¶ 108), for

breach of contract (*Id.* at ¶ 123-124), for invasion of privacy (*Id.* at ¶¶ 118-119), for a violation of the Americans with Disabilities Act (*Id.* at ¶ 107), for a violation of the Equal Protection Clause of the United States Constitution (*Id.* at ¶¶ 109-11), and for violations of the Age Discrimination and Employment Act. (*Id.* at ¶¶ 92, 113-115) The Defendants moved to dismiss these twelve claims, and Johnson, in his response brief, asserted that he was "withdrawing" these specific allegations from his complaint.

Johnson's attempt to "withdraw" these twelve claims is, in essence, an attempt to amend his complaint. Rule 15 of the Federal Rules of Civil Procedure provide the mechanisms for amending a complaint. Doing so in a response brief is not an option provided by Rule 15. The Court cannot, therefore, amend Johnson's complaint as he demands. Nevertheless, because Johnson did not oppose the portion of the Defendants' motion to dismiss addressing these twelve claims, the Court will dismiss these claims because of Johnson's failure to prosecute them.[1]

II.   Family Medical Leave Act Claims

Johnson's complaint states two claims for relief for alleged violations of the federal Family Medical Leave Act ("FMLA"). (Compl. ¶¶ 104-105.) In order to establish an FMLA claim, Johnson must demonstrate the following: (1) his employer is covered by the FMLA;

---

[1] Johnson states that he does not wish to withdraw his claim for declaratory relief for the Defendants' alleged violation of HIPAA. Johnson's claim for declaratory judgment on his HIPAA claim cannot proceed. There is no private right of action under HIPAA. *See Swift v. Lake Park High School*, 2003 WL 22388878, *4 (N.D. Ill. Oct. 21, 2003) ("No federal court reviewing the matter has ever found that Congress intended HIPAA to create a private right of action.") Thus, Johnson's HIPAA claim must be dismissed in its entirety.

6

(2) he was "eligible" for FMLA's protections; (3) he had a "serious health condition" within the meaning of the FMLA that required him to have time off from work; and (4) the Defendant refused to rehire him because he took FMLA leave. *See Klaus v. Builders Concrete Co.*, 2002 WL 193417, at *3 (N.D.Ill. Feb. 7, 2002). Johnson's FMLA claim falls short because he cannot establish that he was "eligible" for FMLA's protections.

The FMLA defines an "eligible employee" as one "who has been employed for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title . . . ." 29 U.S.C. § 2611(2)(A)(i). In other words, a plaintiff must first request FMLA leave from his employer in order to be "eligible" for FMLA benefits. *See Klaus*, 2002 WL 193417, at *3; *Sampson v. Citibank F.S.B.*, 53 F.Supp. 2d 13, 19 (D.D.C. 1999). In Johnson's complaint, he admits he never requested FMLA leave. In fact, his attorney wrote the County a letter expressly stating that Johnson was "not applying for Family Medical Leave." (Compl. ¶ 47, Ex. F.) Accordingly, Johnson is not an "eligible" employee under FMLA, and his claims based on FMLA must be dismissed.

III.    Federal Due Process Claims

Johnson seeks a declaratory judgment, pursuant to 42 U.S.C. § 1983, that the Defendants violated his Fourteenth Amendment due process right. His right was violated, according to Johnson, in two instances: (1) on July 14, 2003, when the County did not allow Johnson to use his sick leave time during his absence, and instead required him to use his vacation time; and (2) on September 24, 2003, when Johnson's status was "changed from

7

holiday and vacation time to Absent Without Pay status." (Compl. ¶¶ 103,111-112.)

As an initial matter, Griffin's due process claim depends on him being denied a property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 576-78 (1972). To determine whether a property interest exists in a particular aspect of employment, a court must look to state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).

Wisconsin law protects an officer from suspension, demotions and discharge. *See* Wis. Stat. § 59.26(8)(b). Nevertheless, Johnson's due process claims do not allege that he was improperly denied his employment. Rather, he only claims that he was improperly denied his sick leave, starting on July 14, 2003, and his vacation time, starting on September 24, 2003. Wisconsin law does not protect an employee's entitlement to the payment of sick leave or to other benefits of employment – it only protects him from suspension, demotions and discharge. *Id.* Thus, Johnson does not have a property interest, for purposes of a due process claim, in his sick leave time or his vacation time. *See, e.g., Swick v. City of Chiago*, 11 F.3d 85, 87 (7th Cir. 1993) (holding that police officer who was placed on involuntary sick leave did not have a property interest protected by the Due Process clause.) Accordingly, his due process claims are dismissed.

IV.     Battery Claim Pursuant to 42 U.S.C. § 1983

Johnson alleges that the County and Clarke are liable, pursuant to 42 U.S.C. § 1983, for committing a battery against him by requiring him to submit to two medical examinations. (Compl. ¶ 117.) This claim can be summarily dismissed. The existence of

8

an adequate state law remedy forecloses a § 1983 action. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.")

V.      Wisconsin State Law Claims

Johnson alleges several claims under Wisconsin state law. Specifically, he seeks certiorari review of state administrative decisions, declaratory judgment for alleged violations of various chapters of the Wisconsin code, damages for his claim of battery, a writ of mandamus, and his lost wages pursuant to § 109.03(5), Wis. Stats. (Compl. ¶¶ 85-102, 116, 188, 120-125.) All of these claims must be dismissed because Johnson failed to comply with the Wisconsin notice of claim statute. *See* Wis. Stat. § 893.80.

Section 893.80, Wis. Stats., provides that an action cannot be brought against a governmental agency, or an "officer, official, agent or employee" of a governmental agency, unless two requirements are met. First, the claimant must provide written notice of the circumstances of his claim within 120 days after the happening of the event giving rise to the claim. *See* Wis. Stat. § 893.80(1)(a). Second, the claimant must present a claim containing the address of the claimant and an itemization of relief sought. *See* Wis. Stat. § 893.80(1)(b). The purpose of the notice requirement is to provide municipalities, and their officers, officials, agents, and employees, an opportunity "to compromise and settle a claim without costly and time-consuming litigation." *City of Racine v. Waste Facility Sitting Bd.*, 216 Wis. 2d 616, 622 (1998).

9

Johnson, in his complaint, concedes that he "fail[ed] to give the requisite notice" of § 893.80(1). (Compl. ¶ 126.) Thus, he has pled himself out of court by alleging a fact that requires the dismissal of his claims. Accordingly, all of his state law claims must be dismissed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' Motion to Dismiss (Docket No. 15) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 1st day of February, 2006.

          **BY THE COURT**

          s/ Rudolph T. Randa
          **Hon. Rudolph T. Randa**
          **Chief Judge**